ELECTRONICALLY FILED
Case 2:21-cv-01693-MLP   Document 1-1   Filed 12/21/21   Page 1 of 23
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 21-2-03544-31

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF SNOHOMISH

|  |  |
|---|---|
| JACOB SCHMITT, an individual, | Case No.   21-2-03544-31 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | (Civil Rights, and Jury Trial Demanded) |
| STATE OF WASHINGTON;<br>WASHINGTON DEPARTMENT OF<br>CORRECTIONS; VICTORIA SANCHEZ;<br>RAIMECA MARTIN; ARIEG AWAD;<br>DOES I-X, | |
| Defendants. | |

COMES NOW Plaintiff Jacob Schmitt, by and through the undersigned attorney, and for the causes of action against the above-named Defendants, alleges and avers as follows:

## I.   <u>INTRODUCTION</u>

1.      Plaintiff Jacob Schmitt, by and through his undersigned counsel, files this Complaint for Damages against defendants for violations of his rights under Washington State law. He brings this action due to defendants' denial of medical treatment, and its delaying of

COMPLAINT FOR DAMAGES - 1
Case No.

medical treatment in violation of Department of Corrections policy and the United States constitution. Defendants have been deliberately indifferent to the serious medical needs of plaintiff. As a result, defendants have violated plaintiff's rights under RCW 70.48.130 and 72.10.005 and have caused plaintiff to suffer great pain and deprivation of his civil, statutory and constitutional rights, physical injuries, anxiety, loss of good health, as well as mental and emotional distress.

## II.    VENUE

2.      All of the unlawful acts and practices alleged herein occurred in or near the City of Monroe in Snohomish County, Washington. Thus, the Snohomish County Superior Courthouse is the appropriate forum for this matter.

## III.    PARTIES

3.      Plaintiff Jacob Schmitt is a male citizen of the United States, and is a resident of the State of Washington. He is an adult male inmate currently incarcerated at the Monroe Correctional Complex ("MCC") in the Twin Rivers Unit ("TRU") in Monroe, Washington.

4.      Defendant State of Washington is a public entity which runs the Washington Department of Corrections.

5.      Defendant Washington Department of Corrections ("DOC") is an agency of the State of Washington and is a public entity that had complete control over plaintiff because he was housed in its prison system.

6.      Defendant Victoria Sanchez was at all times relevant hereto an advanced registered nurse practitioner (ARNP) at Monroe Correctional Complex TRU.

7.      Defendant Raimeca Martin was at all times relevant hereto an advanced registered nurse practitioner (ARNP) at Monroe Correctional Complex TRU.

COMPLAINT FOR DAMAGES - 2
Case No.

Civil Rights Justice Center PLLC
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

8.     Defendant Arieg Awad was at all times relevant hereto a doctor at Monroe Correctional Complex TRU.

9.     Defendants Does I through X are employees of the State of Washington to be identified through the discovery process and when the true names and capacities are ascertained, plaintiff will seek leave to amend.

10.     Each defendant is, and at all times herein mentioned was acting under color of law and was an agent of Washington State Department of Corrections and acting within the course and scope of that agency in causing the harm as herein alleged.

## IV.     ADMINISTRATIVE PROCEEDINGS

11.     Plaintiff filed a tort claim on February 16, 2021. More than 60 days have passed, and the State of Washington has not responded. As a matter of law, plaintiff's tort claim has been rejected

12.     Plaintiff has exhausted all possible grievances and pursued all administrative remedies which were made available to him regarding the events and claims herein.

## V.     STATEMENT OF FACTS

13.     Plaintiff is a 47-year-old male inmate currently housed within the TRU of the Monroe Correctional Complex. In 2003, he underwent spinal fusion surgery on his C5 and C6 vertebrae.

14.     On September 22, 2019, plaintiff was injured while working in the inmate kitchen. On a typical shift, plaintiff made 70 meals over the course of ten hours. On this day, plaintiff and two of his coworkers were responsible for making almost 800 meals. The increased speed and intensity of work led to plaintiff feeling he had "run into a wall," with fatigue and pain throughout his body including his neck and shoulders. Plaintiff left work an hour and a half early

**Civil Rights Justice Center PLLC**
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

as a result. That night, he began to experience burning pain in his right shoulder and back that worsened as time progressed. By September 28, 2019, plaintiff stopped working in the inmate kitchen and never resumed working in that same position.

15.     On October 4, 2019, plaintiff declared a medical emergency and was first seen by DOC providers PA-C Adelaide Horne and RN2 Cynthia Klimper. By October 7, 2019, most of plaintiff's muscles on the upper right side of his body were paralyzed, severely impacting his range of motion. Plaintiff repeatedly reported his pain and paralysis to DOC medical staff, including by declaring numerous medical emergencies related to his pain.

16.     On October 15, 2019, PA-C Horne emailed DOC provider Dr. Kenneth Sawyer asking for his advice on plaintiff's treatment, and the next day Horne submitted a formal consultation request for Care Review Committee (CRC) approval to refer plaintiff to an occupational medicine specialist, a request DOC medical ultimately fulfilled through scheduling plaintiff with an orthopedist.

17.     When she submitted this request, Horne marked it as "non-urgent" despite the considerable pain and impact on range of motion and muscle strength that plaintiff's injury caused.

18.     PA-C Horne and plaintiff also completed a Department of Labor and Industries (L&I) Report of Incident form on which Horne indicated that it was "possible (less than 50% chance)" that plaintiff's injury was a direct result of his work. Through October and November, plaintiff continued to declare medical emergencies and speak with DOC medical staff about his pain and inability to sleep.

**Civil Rights Justice Center PLLC**
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

19.     On November 6, 2019, over a month after plaintiff first reported his injury in which no diagnostic tests were performed, PA-C Horne finally requested an x-ray be taken of plaintiff's cervical spine.

20.     On November 11, 2019, plaintiff reported to ARNP Marquetta Washington that the muscles in his right arm were not engaging properly and would intermittently spasm. In response, ARNP Washington modified his Health Status Report to indicate that he should do no heavy lifting and be assigned a lower bunk.

21.     On December 3, plaintiff again reported to ARNP Mary Gumbo about neck and back pain affecting his ability to sleep. ARNP Gumbo told him the October 15th request PA-C Horne had submitted to the CRC for him to see a specialist had finally been approved, and that he should watch call-out.

22.     Plaintiff also asked if he would receive an MRI, which PA-C Horne had told him she had previously requested but received no answer. Despite his clearly urgent need for medical attention beyond the level DOC staff was willing or able to provide, plaintiff was not ultimately taken to a specialist until December 12, 2019, almost two months after PA-C Horne initially requested advice from Dr. Sawyer on his treatment and submitted a request for a consultation on his case.

23.     On December 12, 2019, plaintiff was seen by orthopedic surgeon, Dr. Scott Schaaf, DO at the Everett Clinic. Dr. Schaaf examined plaintiff and noted that his symptoms, including pain radiating down his neck to his finger, were exacerbated by his previous cervical fusion. By this point, plaintiff was experiencing excruciating pain whenever he rotated his neck.

24.     Dr. Schaaf recommended plaintiff be immediately provided with a supportive pillow and mattress, ordered an MRI to better diagnose his injury, and referred him to the Spine

Center for follow-up care with neurosurgery after his MRI. He also noted that plaintiff may benefit from physical therapy and specific medications such as Medrol. To date, plaintiff has never received any physical therapy materials or treatment from DOC staff and DOC medical providers never followed-up with plaintiff regarding his physical therapy needs.

25.     Later that day, ARNP Washington emailed DOC employee Jaimie Arcand and Facility Medical Doctor Dr. Areig Awad that plaintiff needed to be scheduled for an MRI and referral to the Everett Clinic Spine Center.

26.     On December 16, Arcand replied to Washington asking if plaintiff's MRI had been approved by L&I. The question was left unanswered until well into January, significantly after plaintiff filed a grievance over his lack of care.

27.     On December 20, 2019, L&I denied plaintiff's claim because of the unlikely causal relationship between his injury and his work, as determined by PA-C Horne.

28.     On December 30, 2019, plaintiff again reported pain unmanaged by commissary ibuprofen and muscle atrophy to DOC provider LPN Caitlin Rapach. That same day, plaintiff also submitted a grievance over not having received a medical mattress, an MRI, or follow-up with a spine specialist as recommended by Dr. Schaaf.

29.     During the first week of January, plaintiff wrote to L&I asking for a copy of all records they used in reaching their decision to deny his claim. This was interpreted by L&I as an appeal on his claim.

30.     On January 7, 2020, plaintiff was interviewed by Health Services Manager (HSM) Elke Jackson regarding his grievance over DOC medical's lack of follow-through on Dr. Schaaf's recommendations.

COMPLAINT FOR DAMAGES - 6
Case No.

Civil Rights Justice Center PLLC
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

31.    On January 8, 2020, plaintiff's wife emailed HSM Jackson regarding her husband's care. Also on January 8, ARNP Washington submitted an urgent request for plaintiff to be scheduled for an MRI within two weeks, which was approved by Dr. Awad.

32.    On January 10, 2020, Dr. Awad emailed a variety of plaintiff's treating providers about the status of his L&I claim as it related to his MRI. On January 13, HSM Jackson emailed Dr. Awad that plaintiff's request for a mattress had not yet been submitted to the CRC. Dr. Awad then submitted a CRC request for a medical mattress and told plaintiff's primary provider, ARNP Washington that she would have to present his case.

33.    On January 14, Awad learned from MHC Nakishiamarie Ashbert that Dr. Schaaf had in fact requested an MRI and it had not been completed. Accordingly, Dr. Awad finally responded to Jaimie Arcand's December 16th email that the MRI was approved by L&I on January 14, 2020. This was incorrect, as L&I had already rejected plaintiff's original claim over a month prior and had not yet ruled on his appeal.

34.    As the DOC is required to provide necessary medical care to all inmates regardless of if that care will be paid for by L&I, the status of plaintiff's L&I case should have had no bearing on the timely scheduling of his desperately needed medical care.

35.    On January 15, 2020, the CRC denied plaintiff's request for a medical mattress despite noting it was recommended by Dr. Schaaf.

36.    On January 17, 2020, plaintiff received a response to his grievance from grievance coordinator Brandi Blair who falsely indicated that ARNP Washington had never submitted CRC referral requests for an MRI or medical mattress. She wrote that referrals to the CRC for approval of a medical mattress and an MRI had been submitted on January 10 as a result of the grievance investigation. However, according to email records between HSM

COMPLAINT FOR DAMAGES - 7
Case No.

Civil Rights Justice Center PLLC
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

Jackson, Dr. Awad, Jaimie Arcand, and various other DOC medical staff, the referral to the CRC for plaintiff's medical mattress was not submitted until January 13th and it seems no referral to the CRC was necessary for plaintiff's MRI, as Awad asked Arcand to schedule this procedure without first requesting CRC approval.

37.     After receiving Blair's response to his grievance, plaintiff sent a Health Services Kite (HSK) to ARNP Washington on January 17 requesting he begin the medication Dr. Schaaf recommended to manage his pain. Ten days later, Washington responded asking, "What meds?," despite having access to plaintiff's complete medical record including the visit notes and recommendations from Dr. Schaaf. Plaintiff never received the pain treatment Dr. Schaaf recommended that DOC medical staff provide to him for his pain.

38.     On January 20, 2020, plaintiff submitted a new grievance over medical staff not following Dr. Schaaf's recommendations, including with regard to MRI scheduling, as he still had not received indication that his MRI had in fact been scheduled. Plaintiff specifically grieved how the CRC directed that DOC medical staff provide plaintiff with a full workup which would include an MRI before making a final decision on his care. However, DOC staff never resubmitted plaintiff's medical mattress request even after he was provided with an MRI on February 8, 2020.

39.     On January 25, 2020, Becky J. Morgan emailed Dr. Awad the CRC report denying plaintiff's request for a medical mattress, and Awad passed this document along to ARNP Washington for her signature.

40.     On January 28, plaintiff was interviewed by HSM Jackson. On January 29th, Jaimie Arcand responded to Dr. Awad's email from over two weeks prior regarding the scheduling of plaintiff's MRI, indicating that it had been scheduled for February 8.

Civil Rights Justice Center PLLC
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

41.     On February 6, 2020, L&I claim manager Andrea Miller responded to plaintiff's appeal affirming their original decision to deny his claim, stating that physician's assistants are qualified to assess the causal relationship between a workplace incident and an injury. A copy of this letter was sent to plaintiff's DOC medical providers and included in his medical file.

42.     On February 8, 2020, plaintiff finally received the MRI ordered by Dr. Schaaf nearly two months prior. The MRI showed severe central spinal stenosis eccentric to the right at C6-C7, severe right foraminal stenosis, and mild left foraminal stenosis caused by a moderate diffuse disc bulge/osteophyte and superimposed right lateral recess disc extrusion. DOC was made aware of these diagnostic tests on February 10, 2020.

43.     Throughout February 2020, plaintiff continued to await appropriate treatment of his condition. During this time, he developed cystitis and was treated with antibiotics. Medical staff noted a mass developing on his left flank on February 14 and again on February 18 and discussed x-rays for further diagnosis.

44.     On or around February 20, 2020, plaintiff received a response to his grievance stating that the delay in his MRI was due to L&I closing his claim before the MRI was scheduled and that he would need to work with L&I to access further care. This response was sent by grievance coordinator, Brandi Blair.

45.     On February 20, 2020, plaintiff appealed this response to level two, noting in his appeal that, "DOC is completely responsible for my medical care regardless of an L&I claim."

46.     On February 26, 2020, plaintiff reviewed his medical file and learned that no referral to the Spine Center or any other specialist had been made for follow-up on his MRI results despite the plan initially laid out by Dr. Schaaf. In addition to his lack of follow-up care, while plaintiff had received a cervical pillow as recommended by Dr. Schaaf in November of

Civil Rights Justice Center PLLC
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

2019, plaintiff had still not received the medical mattress Schaaf recommended in December 2019.

47.     Plaintiff filed a third grievance over delays and denials of medical care on March 6, 2020, again noting that DOC cannot shift the duty of care they owe him to L&I.

48.     On March 20, 2020, despite plaintiff not having been seen by a medical provider other than to receive previously prescribed medication over a month, a consultation request form for plaintiff to see a spine specialist was submitted by Nurse Practitioner (NP) Patricia Robertson and Dr. Awad.

49.     Also on March 24, 2020, at Awad's instruction, Robertson emailed DOC employee Dr. Kenneth Sawyer that Dr. Awad wanted his input on if plaintiff should be approved to see a spine specialist. Dr. Awad noted to Robertson that if Sawyer approved the consultation they would not need to go through the CRC. The same day, HSM II Billy Heinsohn, who was then responsible for plaintiff's grievances, emailed HSM Jackson to schedule Schmitt to be seen in order to "ease his multitude of grievances."

50.     As a result of Heinsohn's investigation into plaintiff's grievances and intervention with medical staff, plaintiff was finally seen by DOC employee ARNP Victoria Sanchez on March 25, 2020, nearly two months after his MRI took place. Additionally, Dr. Sawyer responded to NP Robertson and Dr. Awad that he agreed with Dr. Schaaf's original recommendation that plaintiff should be sent to a neurosurgeon.

51.     ARNP Sanchez reached out to Dr. Awad after her appointment with plaintiff inquiring as to the status of his medical mattress request. Awad responded that she had submitted the request to the CRC, which was not actively meeting at the time due to Covid-19, but that the

CRC would most likely deny the request as it only approves mattresses for a short duration post-operatively or if the patient has bedsores.

52.     Later on the 25th, ARNP Sanchez sent plaintiff an HSK stating that he would be scheduled with a spine specialist "as soon as movement is restored due to Covid-19" and that his medical mattress request had again been denied "in spite of [his] recent MRI findings due to DOC policy."

53.     On April 13, 2020, plaintiff received a response to two grievances over delays in care from Health Services Administrator (HSA) Shane L. Evans stating that medical staff did not appear to have caused plaintiff's delay in care and apologizing on behalf of medical staff for plaintiff's continued pain, stress, and frustration due to the delay of care. Evans confirmed that DOC is required to provide care outside of L&I claims. Plaintiff appealed his level two grievance to level three on April 17th.

54.     On April 20, 2020, plaintiff sent an HSK to ARNP Sanchez regarding issues with his prednisone (which had been prescribed in an attempt to manage his pain). On April 25, Sanchez replied that he was scheduled to see her on the 18th. In her Primary Encounter Report for that visit, she noted that Schmitt was awaiting follow up with neurosurgery, but, as for consults, she saw "none in OMNI" for nerve pain. This indication that no follow-up appointment or consultation request was noted in the DOC's central tracking system is perplexing given earlier indications that plaintiff's consult request had been approved and would be scheduled as soon as possible given Covid-19 procedures.

55.     Throughout the remainder of April and well into May, Sanchez and plaintiff regularly conversed by Kite regarding the inefficacy of his pain medication. Finally, on May 14,

**Civil Rights Justice Center PLLC**
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

2020, plaintiff asked ARNP Sanchez for a Health Status Report (HSR) excusing him from work because of his pain and the associated disruption to his sleep.

56.     Plaintiff declared two medical emergencies related to his extreme pain on May 15th and May 19th. On May 19, Sanchez adjusted his pain medication and told him they needed to do some additional diagnostic testing before they could send him to the spine specialist. The same day, she submitted a routine request for an x-ray of plaintiff's cervical spine which was completed on May 21, 2020.

57.     On May 22, 2020, plaintiff again saw ARNP Sanchez, who prescribed him three days of oxycodone in another inadequate attempt to manage his pain. On May 27, plaintiff again declared a medical emergency related to his pain. The same day, he received a level three response to his grievance, which upheld prior grievance responses in confirming that the status of his L&I claim should have no bearing on the medical care he is able to receive from DOC.

58.     Finally, on June 16, 2020, over seven months after he was originally referred to the Spine Center by Dr. Schaaf and five months after his MRI was completed, plaintiff saw neurosurgeon Dr. David Su at Providence Medical Group Cranial, Spine and Joint Clinic. Dr. Su noted muscle atrophy in plaintiff's shoulder and arm, and told plaintiff that because he had been injured for so long without treatment, his prognosis for a full recovery was grim.

59.     Dr. Su instructed DOC staff on June 16, 2020 that plaintiff be scheduled for spinal fusion surgery as soon as possible and indicated that while awaiting surgery plaintiff should be prescribed oxycodone for a full four weeks prior to his surgery. DOC medical staff did not convey plaintiff's preoperative instructions to him, nor did they provide him with oxycodone or follow Dr. Su's request that plaintiff not receive any NSAIDs or other blood thinning medications

Civil Rights Justice Center PLLC
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

60.     DOC medical providers' failure to provide plaintiff with oxycodone and proper preoperative instructions during the four weeks prior to his surgery which was initially scheduled for July 10, 2020, forced plaintiff's surgery to be rescheduled for July 17, 2020.

61.     When plaintiff arrived on the pill line expecting to receive his pain medication as usual on the morning of July 10, 2020, he was denied his medication and offered no alternative for managing his pain prior to his rescheduled surgery. Plaintiff filed an emergency grievance after this occurred.

62.     DOC failed to treat plaintiff's pain after his emergency grievance response resulting in plaintiff's filing of an additional non-emergency grievance over DOC's failure to appropriately manage his pain, noting the 28 days between when he was initially evaluated by Dr. Su, who noted his need for better pain management, and when DOC providers actually changed any of his pain prescriptions.

63.     On July 17, 2020, plaintiff finally underwent surgery at Providence Regional Medical Center. While hospitalized, his ability to chew and swallow was evaluated by an occupational therapist, who indicated that modifications should temporarily be made to his diet to lower his risk of choking and facilitate his recovery.

64.     On July 20, 2020, plaintiff was discharged from the hospital and provided discharge instructions including a list of specific medications he should take and stating that he should be provide opioid medications and slowly tapered off these over the course of six weeks. He was also to adhere to a dysphagia diet and refrain from lifting more than ten pounds for twelve weeks after his surgery and scheduled for follow-up appointments with his surgical team on July 30th and August 27th.

Civil Rights Justice Center PLLC
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

65.     Upon his return to DOC custody, plaintiff's medications were immediately improperly managed by his then-primary care provider ARNP Martin, who did not appropriately communicate changes in plaintiff's prescribed medications to him. Plaintiff filed a grievance regarding this treatment on August 4, 2020.

66.     On August 6, 2020, plaintiff was denied muscle relaxants by ARNP Martin because, per Martin, this medication can only be given to inmates for fourteen days without CRC approval. Even though plaintiff's discharge instructions indicated he use muscle relaxants for six weeks post-surgery, no request for CRC approval was submitted by medical staff on his behalf and his medication was allowed to expire. Plaintiff submitted an emergency grievance requesting that he be given muscle relaxants while awaiting CRC review but was ultimately denied.

67.     On August 23, 2020, plaintiff also filed a grievance after learning the full details of a July 24th incident regarding DOC medical staff, including ARNP Martin, abruptly changing his pain medication instead of tapering off one medication and moving on to the next. This caused plaintiff to experience extreme side effects and declare a mental health emergency. CRC staff also denied plaintiff's grievance pertaining to this issue.

68.     Plaintiff filed a non-emergency grievance to appeal the denials of both grievances on August 6th and 23rd. Resolution Specialist Alex Watanabe who replied by stating that plaintiff was provided with post-operative support after filing emergency medical grievances and appeals.

69.     In addition to consistently mismanaging his post-operative medications, DOC never provided plaintiff with the dysphagia diet indicated on his discharge instructions, nor did they follow up on his ability to safely swallow without pain or sticking.

70.     As indicated during plaintiff's July 30 post-operative appointment, x-rays should have been taken prior to his second follow-up on August 27 in order to assess the placement of

COMPLAINT FOR DAMAGES - 14
Case No.

Civil Rights Justice Center PLLC
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

and healing around hardware inserted into his spine during surgery. However, DOC medical staff again failed to appropriately follow the instructions of plaintiff's outside providers, and no x-rays were taken before his follow-up. Plaintiff grieved this failure on August 28, 2020.

71.     On August 20, 2020, plaintiff was moved from one cell to another. As part of this process, he had to pack up and carry his belongings. Plaintiff had a post-operative restriction on lifting more than ten pounds which remained in effect while he was moving; however, he was denied assistance despite informing custody staff of his physical restrictions. Plaintiff was later informed by the Shift Lieutenant that Sergeant Grewall and Officers Shluter and Sequeira were required to help plaintiff move his belongings to his new cell due to his post-operative restriction and failed to provide plaintiff with any assistance.  DOC officers were aware that plaintiff had an HSR to not lift more than ten pounds after his surgery and did not perform their duty to confirm plaintiff's post-operative restriction and help plaintiff move his belongings.

72.     Plaintiff filed a grievance regarding DOC officers' failure to assist him during his move to a new cell and received a response on November 30, 2020, informing him that custody staff had been wrong to indicate it was medical's responsibility to ensure he had an assistant while moving and that they should have contacted medical staff if they had any questions about his restrictions.

73.     Throughout September 2020, plaintiff received a variety of responses to his grievances regarding the numerous delays and failures of DOC to provide him timely and appropriate medical care leading up to and during his recovery from surgery. In these responses, DOC staff admitted that his pain medication prior to surgery was delayed, that his primary care provider failed to communicate with him regarding his care, that he was inappropriately denied muscle relaxants post-operatively, that DOC staff misread his Providence records and failed to

Civil Rights Justice Center PLLC
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

1   schedule his required x-rays, and that his primary care provider failed to appropriately taper his

2   medication when switching from one prescription to another.

3       74.     After plaintiff's spinal surgery, he had been taken to an outside provider for

4   physical therapy every other week and, on weeks he was not taken to an outside provider he saw

5   DOC's physical therapist Bryan Weston. In early November 2020, these physical therapy visits

6   abruptly stopped with no explanation provided to plaintiff, who was simply told he would not be

7   scheduled for outside physical therapy again.

8       75.     Plaintiff attempted to follow up with DOC's physical therapist, but was told that

9   Mr. Weston had refused to see him any longer because of his 'attitude.' In total, plaintiff

10  received only ten weeks of physical therapy after his major surgery. Since then, he has been fully

11  unable to access either follow-up with a physical therapist or independent use of physical therapy

12  equipment to strengthen his atrophied shoulder and arm.

13      76.     On November 19, 2020, as part of his L&I case, plaintiff saw Dr. Michael Santoro

14  at Skagit Northwest Orthopedics in order for Dr. Santoro to definitively determine if his injuries

15  were the result of his work activities. Dr. Santoro ultimately concluded that a variety of other

16  factors, including prior surgical history and prior injury, may have contributed to the

17  development of plaintiff's condition as much as his work activities did, conclusively indicating

18  that L&I industries is not responsible for paying for plaintiff's medical care. In his evaluation of

19  plaintiff's current condition, Dr. Santoro noted moderate muscle atrophy in plaintiff's right arm,

20  diminished right arm muscle reflexes, and sensory impairment to the right forearm and hand – all

21  signs of lingering nerve root dysfunction.

22      77.     As the direct result of his delays in care and persistently mismanaged care,

23  plaintiff needlessly suffered extreme, unmitigated pain for months. He did not receive surgery

**Civil Rights Justice Center PLLC**
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

for his spine injuries until ten months after his initial injury on September 22, 2019. This delay was caused by repeated failures of DOC staff to appropriately schedule or follow-up on plaintiff's care.

78.    While awaiting appropriate care, DOC staff failed to mitigate plaintiff's pain by denying him the medical mattress and pillow indicated by Dr. Schaaf as medically necessary to reduce his pain and reduce further damage to his spine.

79.    DOC staff also failed to evaluate plaintiff for and prescribe him painkillers such as gabapentin that specifically target nerve pain and would likely be more effective at controlling his pain with fewer side effects, immeasurably reducing his suffering and increasing his ability to function.

80.    During the delays in his care, plaintiff has felt helpless, frustrated, and anxious as his repeated requests for prompt and appropriate medical treatment have been met by callous indifference and continued failure to promptly address his injury.

81.    In addition, as a direct result of his injury and lack of appropriate care, plaintiff was unable to work from September 2019 to December 2020. Had plaintiff been properly and timely treated, he would have been able to return to work faster and been better able to recover from his injury. The continued restrictions on how much plaintiff can lift, his mobility, and his manual dexterity limit the work he is able to perform both presently and, given his poor prognosis for complete recovery of sensation to his dominant hand, for the rest of his life.

82.    To date, plaintiff has never been evaluated by a pain management specialist or considered for medication targeting nerve pain and has received a lack of occupational and physical therapy since November 2020. Plaintiff has also not been approved for or received an adequately supportive mattress as indicated by Dr. Schaaf over a year and a half ago.

**Civil Rights Justice Center PLLC**
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

83.     As recent as July 3, 2021, plaintiff's wife emailed DOC medical staff regarding plaintiff's providers' failure to provide him with medically necessary medication to manage his chronic pain and other medical conditions. She stated that plaintiff has been unable to receive multiple medications, including cholesterol medication, aspirin, and meloxicam on a regular basis. Plaintiff's wife also noted how DOC staff has also failed to provide plaintiff with a consistent Tylenol prescription to manage his pain and her desire to be updated on the statuses of plaintiff's referral to a physical therapist, pain management specialist, and for a therapeutic mattress.

84.     On July 6, 2021, Health Services Manager Rachel Symon responded to the email from plaintiff's wife stating that plaintiff had been receiving medication for his cholesterol, and he was denied for a medical mattress by the CRC but was approved for a cervical pillow. Symon also stated that plaintiff was approved to see an outside physical therapy provider and his appointments were in the process of being scheduled.

85.     Since November 2020, plaintiff has been unable to receive physical therapy treatment as DOC staff has failed to provide plaintiff with access to a physical therapy provider to treat his injuries. Plaintiff has never received a medical mattress or a consistent schedule of medication for his various conditions despite multiple grievances and appeals to the CRC regarding his treatment plan.

86.     The delays in plaintiff's care have caused substantial, irreparable damage to his arms and fingers. Plaintiff has lost muscle tone in his arm and sensation and dexterity in his dominant hand. When attempting to do tasks which used to be easy for him – for example, using a screwdriver to repair a fan – he finds he is completely unable to effectively use his dominant arm like he used to.

**COMPLAINT FOR DAMAGES** - 18
Case No.

**Civil Rights Justice Center PLLC**
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

87.     DOC staff has displayed a continuous lack of care for plaintiff by repeatedly denying his emergency grievances and failing to provide him with a medical mattress as well as physical therapy treatment. Plaintiff faces poor prospects for recovery, especially since he remains under the full control of the same DOC medical system that consistently fails to provide him timely and appropriate medical care.

## VI.     FIRST CAUSE OF ACTION

(RCW 70.48.130 and 72.10.005 – Medical Malpractice or Failure to Provide Adequate Medical Care)

88.     Plaintiff realleges and incorporates by reference herein paragraphs 1 through 87 with the same force and effect as if such paragraphs were separately realleged in this Second Cause of Action.

89.     RCW 70.48.130 provides that "all jail inmates receive appropriate and cost-effective emergency and necessary medical care…[and] the healthcare authority and medical care providers shall cooperate to achieve the best rates consistent with adequate care." RCW 70.48.130.

90.     RCW 72.10.005 provides that "inmates in the custody of the department of corrections receive such basic medical services as may be mandated by the federal Constitution and the Constitution of the state of Washington." RCW 72.10.005.

91.     The Washington DOC Health Plan and WAC 137-91-010 define "medically necessary care" as meeting one or more of the following criteria: reduces intractable pain, prevents significant deterioration of Activities of Daily Living ("ADLs"), immediate intervention is not medically necessary, but delay of care would make future care or intervention for intractable pain or preservation of ADLs significantly more dangerous, complicated, or significantly less likely to succeed.

Civil Rights Justice Center PLLC
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

92.     RCW 72.10.020 states that "[t]he department, in accordance with medically accepted best practices and in consultation with the health care authority, shall develop and implement uniform standards…when a patient's current health status requires a referral for consultation or treatment outside the department." RCW 72.10.020.

93.     All defendants, and persons working at the direction of defendants, failed to provide plaintiff with a timely referral for consultation or treatment outside of the department despite plaintiff's injuries demonstrating a need for a medical consultation. Defendants and their agents deprived plaintiff of receiving treatment for his injury in their delay of providing plaintiff with an MRI, delay in pain medication, failure to provide him with a medical mattress, and overall indifference to the dire medical needs of plaintiff's condition as expressed in multiple emergency grievances.

94.     Defendants were aware of plaintiff's injuries and plaintiff informed defendants of his pain and repeatedly communicated to defendants his serious medical needs. DOC staff, acting within the scope of their employment with the State of Washington, knew plaintiff was suffering from physical pain and overlooked plaintiff's request for medical treatment. This delay of care contributed to plaintiff's loss of muscle tone in his arm and sensation and dexterity in his dominant hand which would not have occurred had plaintiff been provided with adequate and timely treatment following his initial injury.

95.     The State of Washington failed to provide plaintiff with basic and adequate medical care and denied him the rights and benefits accorded to other inmates under DOC standards for providing healthcare to inmates.

96.     As a proximate result of defendant's discriminatory actions against plaintiff, as alleged above, plaintiff has been emotionally and physically harmed in that he has suffered

Civil Rights Justice Center PLLC
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

humiliation, mental anguish, anxiety, mortification, loss of good health, emotional and physical distress, and has been injured in mind and body in an amount according to proof at trial.

## VII. <u>SECOND CAUSE OF ACTION</u>

(Negligence - all defendants)

97.     Plaintiff realleges and incorporates by reference herein paragraphs 1 through 96 with the same force and effect as if such paragraphs were separately realleged in this Third Cause of Action.

98.     Plaintiff was an inmate under the supervision of the Department of Corrections and thus, each aspect of his medical care is under the authority of the DOC.

99.     According to the Washington DOC Health Plan, the CRC should consider factors including medical necessity, tests or evaluations, treatment safety and effectiveness, alternative therapy/procedures that may be appropriate, and the patient's likely cooperation to the prescribed care when deciding if a clinical service should be authorized. Defendants failed to consider these factors when deciding on plaintiff's treatment plan and HSRs resulting in the prolonging and chronic nature of plaintiff's pain and an exacerbation of his initial injury.

100.     Defendants as well as agents of the state were at all times charged with the care of plaintiff's medical needs. Defendants had a duty to ensure that plaintiff received the medical treatment that his condition warranted. Defendants breached their duty of care to plaintiff and acted in conscious disregard of the harm that would be inflicted upon plaintiff when they failed to provide the proper medical care his injuries warranted.

101.     Defendant Washington State Department of Corrections and its individual officers, in committing all the aforementioned wrongs, breached their duty to plaintiff to exercise

reasonable care in the performance of their official duties, and thereby proximately and foreseeably caused plaintiff's civil rights violation.

102.     As a direct and proximate result of the actions and omissions of the defendants as described above, plaintiff has suffered chronic pain, loss of his liberty, and aggravation of his medical conditions. He has been deprived of freedoms that are enjoyed by other inmates. The full extent of his injuries will be proven at trial.

## VIII.     PRAYER

WHEREFORE, plaintiff prays for the following relief against defendants:

A.  For general and special compensatory damages and against all defendants according to proof at trial;

B.  For special damages according to proof at trial

C.  For Punitive damages against individual defendants

D.  For a jury trial on all issues triable by jury;

E.  For reasonable attorney fees according to law or statute;

F.  For costs of suit incurred herein; and

G.  For such other and further relief as the Court may deem just.

**COMPLAINT FOR DAMAGES** - 22
Case No.

**Civil Rights Justice Center PLLC**
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

Dated this 4th day of August, 2021, at Seattle, Washington.

CIVIL RIGHTS JUSTICE CENTER PLLC

*/s/ Darryl Parker*
Darryl Parker, WSBA #30770
2150 North 107th Street, Suite 520
Seattle, WA 98133
206-557-7719
Email:  dparker@civilrightsjusticecenter.com

**COMPLAINT FOR DAMAGES** - 23
Case No.

**Civil Rights Justice Center PLLC**
2150 North 107th St. Ste. 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183